UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-13110-RGS

FIFTY-SIX HOPE ROAD MUSIC, LTD.

v.

RAISING CANE'S USA, LLC

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO TRANSFER
TO THE MIDDLE DISTRICT OF LOUISIANA

February 7, 2014

STEARNS, D.J.

Fifty-Six Hope Road Music, Ltd. (Hope Road) brought this lawsuit against defendant Raising Cane's USA, LLC (Raising Cane's) under the Lanham Act seeking cancellation of Raising Cane's' "ONE LOVE" trademark. Hope Road also seeks damages and injunctive relief on claims of trademark infringement, unfair competition, false association, trademark dilution, and intentional interference with advantageous business relations, all related to alleged misuse of the ONE LOVE mark.[1] Raising Cane's now moves to transfer the action to the District Court for the Middle District of Louisiana pursuant

---

[1] As related to Bob Marley, the reference is to "One Love/People Get Ready," a signature piece recorded by Marley with his band The Wailers in 1965. Considered the gold standard of Jamaican reggae music, the song has long provided the soundtrack for Jamaica Tourist Board promotional advertisements.

to 28 U.S.C. § 1404(a).

## BACKGROUND

Hope Road is a Bahamas corporation with a principal place of business in Nassau, Bahamas.  Hope Road is owned and operated by the children and widow of the legendary Jamaican reggae singer-songwriter Bob Marley.  Hope Road is the exclusive licensor of intellectual property derived from his musical legacy.  Raising Cane's is a fast food chain offering chicken finger meals. Raising Cane's is a Louisiana limited liability company, with a principal place of business in Baton Rouge, Louisiana.

Hope Road attempted to register the ONE LOVE mark for "bar and restaurant services" with the U.S. Patent and Trademark Office (PTO) in July of 2009.  The PTO rejected the application based on a likelihood of confusion with the ONE LOVE mark registered by Raising Cane's in 2005.  After an unsuccessful attempt to avoid litigation, in December of 2010 Hope Road filed with the PTO a Petition for Cancellation of Raising Cane's' mark.  In response, Raising Cane's sought to block Hope Road from claiming the ONE LOVE mark in connection with "entertainment services."  The PTO Trademark Trial and Appeal Board (TTAB) consolidated the actions in March of 2011.  The parties completed all discovery with the exception of two depositions of Hope Road witnesses that were noticed for October 2012.  Between October of 2012 and

August of 2013, Raising Cane's made some seventeen attempts to convene these depositions. Def.'s Ex. O. Finally, on December 3, 2013, Raising Cane's succeeded in taking one of the depositions with the other scheduled to be taken a week later. However, on December 6, 2013, Hope Road moved to stay the TTAB proceeding and simultaneously filed the instant action in this court. Raising Cane's replied with a lawsuit in the Middle District of Louisiana, seeking a declaratory judgment that its ONE LOVE mark does not infringe any rights that Hope Road may hold in the otherwise identical mark.

## DISCUSSION

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a).[2] Where, as here, there are two largely overlapping actions pending concurrently in two federal courts, "the usual practice is for the court that first had jurisdiction to resolve the issue and the other court to defer." *TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996). Exceptions to the first-filed rule apply, however, where: (1) special circumstances justify transfer; or (2) the defendant's choice of forum is substantially more convenient than the one

---

[2] Hope Road does not dispute that it could have brought this lawsuit in the Middle District of Louisiana.

3

chosen by the plaintiff. *Holmes Grp., Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F. Supp. 2d 12, 16-17 (D. Mass. 2002).

Special circumstances are usually found "in situations in which one party has won a race to the courthouse by jumping the gun and filing a declaratory judgment action in a forum that has little relation to the dispute." *Veryfine Prods., Inc. v. Phlo Corp.*, 124 F. Supp. 2d 16, 22 (D. Mass. 2000); *see also Davox Corp. v. Digital Sys. Int'l, Inc.*, 846 F. Supp. 144, 148 (D. Mass. 1993) ("[Plaintiff] should not be permitted to take advantage of the fact that [defendant] responsibly deferred filing potentially protracted and expensive litigation and, indeed, was perhaps misled into believing it would not be prejudiced by doing so . . . ."). Following this lead, Raising Cane's argues that transfer is justified because Hope Road delayed producing its deposition witnesses for over a year and then preemptively filed this lawsuit, before the TTAB could adjudicate the trademark dispute. Hope Road in reply argues that the TTAB is unable to grant the full panoply of relief that it seeks, and that there was no "race to the courthouse door" because  Raising Cane's never intimated that it was working up a Complaint of its own.

Given the fact that Hope Road had a cancellation petition pending at the TTAB for three years before filing suit, its remonstration that it jettisoned the TTAB proceeding – after postponing discovery for over a year – for the sake of

4

"efficiency" rings hollow.  Moreover, Hope Road offers no excuse for holding back the deposition witnesses other than the rather lame observation that "none of the precedents applying the 'race to the courthouse' exception were influenced by a litigant's previous discovery efforts."  Pl.'s Br. at 8.  It is probably true, as Hope Road argues, that nettlesome conduct without more does not trigger an exception to the first-filed rule - and Raising Cane's does not allege that it was deliberately misled by Hope Road into forgoing its own lawsuit, which is often the decisive criterion in deciding whether the exception appplies.

But whether or not special circumstances exist, a transfer of venue is appropriate where a defendant's choice of forum is substantially more convenient than the forum where the original lawsuit is filed.  The interests analysis under the first-filed rule incorporates the same factors as other motions for transfer under section 1404(a).  *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 133 (S.D.N.Y. 1994).  "A number of factors have developed to measure the convenience of litigating in a particular court including 1) the plaintiff's choice of forum, 2) the convenience of the parties, 3) the convenience of witnesses and location of documents, 4) any connection between the forum and the issues, 5) the law to be applied and 6) the state or public interest at stake."  *Kleinerman v. Luxtron*

5

*Corp.*, 107 F. Supp. 2d 122,  125 (D. Mass. 2000).  Hope Road maintains that Massachusetts is the appropriate venue for its Lanham Act lawsuit because Raising Cane's operates a purportedly infringing franchise restaurant in Boston, and this restaurant is the nearest location (in which personal jurisdiction attaches) to New York City, where three of Hope Road's "primary witnesses" reside.

As an initial matter, the presumption in favor of Hope Road's chosen forum of Massachusetts applies with less force than usual because the Commonwealth is not its home state. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 266 (1981).  Although Raising Cane's does have a (single) franchisee store in this district, 40 of its 175 restaurants are located in the Middle District of Louisiana.  Moreover, Raising Cane's is headquartered in Baton Rouge in the Middle District of Louisiana and it maintains a restaurant support office in nearby Plano, Texas.  Thus, all of the documents relating to Raising Cane's ONE LOVE mark and all witnesses with knowledge of the selection, control, and implementation of the mark reside in or near the Middle District of Louisiana.  *See Sitrick v. Dreamworks L.L.C.*, 2003 WL 21147898, at *3 (N.D. Ill. May 14, 2003) ("Intellectual property suits typically  focus on the alleged infringing activities of the defendant, and the employees and documents that evidence these activities.").

6

Finally, Hope Road's assertion that its primary witnesses are located in New York is unsupported by its representations to the TTAB. Two of the three witnesses – Courtney White[3] and Rohan Marley[4] – were not identified at all in Hope Road's initial disclosures in the TTAB proceeding, which required the listing of the name and address "of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses." In any case, the convenience of travel from New York to Boston is not so great as to outweigh the equitable considerations in favor of transfer. Because the bulk of the relevant witnesses and documents relevant to the infringement suit are located in the Middle District of Louisiana and because

---

[3] White is a licensing agent for Bob Marley Music, Inc., an entity that works with companies that have obtained licenses from Hope Road to "utilize any of the intellectual property owned by Hope Road." Hope Road does not list anyone from Bob Marley Music, Inc., in the TTAB disclosures.

[4] Although Rohan Marley's declaration states that he is familiar with his father's musical works and recordings, he does not claim to have any involvement in the use or licensing of the ONE LOVE mark or knowledge of any efforts of Hope Road to enforce the mark. Rather, it appears that Cedella Marley is Hope Road's most significant witness. She is the Director of Hope Road Merchandising, LLC, which is listed as the licensor on the license agreements for ONE LOVE and other Bob Marley trademarks. She is also the signatory on those agreements. Def.'s Ex. E. Michael Conley, who was previously in charge of the sale of licensed Bob Marley clothing, and is one of three Hope Road witnesses listed in the TTAB disclosures, testified that "most of the decisions were [made by] either Cedella or Ziggy [Marley]." Conley Dep. at 85.

that forum has a substantially greater connection to the infringement claims than does Massachusetts (where any connection is tenuous at best), the motion to transfer will be allowed.

ORDER

For the foregoing reasons, defendant's motion to transfer this action to the Middle District of Louisiana is <u>ALLOWED</u>.  The Clerk will so notify the Clerk of that court and will forward the docket and any associated filings together with a certified copy of this Order.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE

8